### Commonwealth v. Pastuch

*Alexander Ogle*, District Attorney, for Commonwealth.

*Frank A. Orban, Jr.*, for respondent.

*Eugene E. Fike, II*, for defendants.

COFFROTH, P. J., June 3, 1971.—We must decide whether Walter L. Williams, Esq., Clerk of Courts, properly certified to the Secretary of Revenue that defendants were convicted of a "felony in the commission of which a motor vehicle is used." The Vehicle Code requires the clerk to certify such a con-

viction to the secretary: 75 PS §616(a)(2) and §1209(b).

The facts are these: Defendants and a third person, not a party to this proceeding, travelled in an automobile to the old brewery building between Ferrelton and Boswell, about 200 yards from Watkins Chevrolet Company. The car was operated by defendant Bence, it was owned by his parents, and defendant Pastuch was a passenger. They parked the car, and sat in it drinking beer. They then left the car on foot, went to the car lot at Watkins Chevrolet and stole some articles from a Watkins car. The constable came along as the theft was being committed and noticed the parked car; as a result of the constable's appearance, defendants left the scene on foot, unnoticed, and went to the home of defendant Pastuch, who lives about a half a mile away. Defendants were traced by the constable through the license of the parked car.

Defendants pleaded guilty to burglary and larceny, and were sentenced. The clerk being of the opinion that a motor vehicle was used in commission of the felony made the certification prescribed by the statute to the Secretary of Revenue who revoked the licenses of defendants. The purpose of this proceeding is to have those licenses restored on the ground that the Bence car was not "used" in the commission of the felony and the certification was, therefore, improper.

Undoubtedly, the Bence car was "used" that evening to transport defendants to their parking place 200 yards from the scene of the felony; the vehicle was, in fact, their means of getting to the scene, or within easy walking distance thereof. The car was not used as a means of leaving the scene, because of the sudden and inconvenient appearance of the curious officer.

How closely must a vehicle be connected with the

commission of the acts constituting the felony? Must the culprits be sitting in the car at the moment of caption, literally reaching from one car to remove parts from the other? Or must the car be used to carry away the stolen property? Either would clearly be "use" of the car in the commission of the felony. Or is it sufficient if the car is used to get to the scene where the felony is committed, or to get away from the scene after commission? And, if so, how close to the scene must it be parked? To hold that a "get-away" car is not "used" in the commission of a crime would be a monstrous dishonesty: Smith Motor Vehicle Operator License Case, 209 Pa. Superior Ct. 487. How does a "get-there" car differ in principle or essential connection from a "get-away" car? Each is used in furtherance of the criminal act; both are convenient if not essential assists to the commission of crime: Commonwealth v. Johnson, 16 Chester 275.

And that sensible conclusion does not depend in the slightest upon whether the offenders formed their criminal purpose before or after they arrived at the brewery parking place as has been suggested. The car fulfilled its helpful function in either event. Suppose that defendants got their criminal idea only seconds before parking, or seconds afterwards? Presumably, under this argument it would make a difference if they only discussed the possibility in general terms before parking, but made up their minds definitely after parking. If defendants were sitting in the car when the decision was made, would the vehicle be "used" in committing the crime? If so, would it be otherwise if they decided after getting out of the car? Would it make a difference if the motor was on or off when the designs became fixed? Suppose one defendant planned it before parking and the other afterwards? We might as well debate the num-

ber of angels who can dance on the head of a pin, as let this case depend on which moment defendants formed their criminal design.

We do not question the propriety of the procedure here followed to test the issue: Smith License Case, supra; Smith v. Smith, 39 D. & C. 2d 406. But the certification was properly made by the clerk. We have no control over the action of the secretary in suspending or revoking the licenses of defendants.

## ORDER

Now, June 3, 1971, rule discharged; costs on petitioners.